IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NICOLA ALTIERI : CIVIL ACTION
:
v. :
:
STATE FARM FIRE AND CASUALTY :
COMPANY : NO. 09-2342

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE                               May 16, 2011

In this case, Plaintiff, Nicola Altieri, seeks insurance coverage for the collapse of a wall of his commercial garage. At the time of the collapse, the property was insured by Defendant, State Farm. However, Defendant has denied coverage, based on an exclusion in the policy. The question ultimately is the cause of the collapse. Plaintiff's expert has authored a report stating that weight of pooled water on the roof caused the collapse, while the defense expert has determined that the collapse was caused by hydrostatic pressure. The former is a covered cause of loss; the latter is not. Plaintiff has filed a motion to preclude the defense expert's testimony. For the reasons that follow, I will deny the Plaintiff's motion.

I.    **FACTUAL AND PROCEDURAL HISTORY**

On April 16, 2007, the rear wall of the commercial garage at 4278-4282 Penn Street in Philadelphia collapsed. See Doc. 1 Exh. A at ¶ 5. At the time, the garage was owned by Plaintiff and insured by Defendant. Id. Gregory Pagano, a public adjuster hired by Plaintiff, submitted the claim to Defendant on April 24, 2007. See Doc. 12 Exh.

D. After representatives from Defendant inspected the property, Defendant hired a structural engineer, Russell E. Daniels, P.E., to inspect the property. See Doc. 13-2 at 1. Mr. Daniels inspected the property on May 14, 2007, and prepared a report concluding that the collapse was caused by soil/hydrostatic pressure. See Doc. 32 Exh. A at 3. Based on Mr. Daniels' report, Defendant denied Plaintiff's claim on May 31, 2007. See Doc. 12 Exh. H. Mr. Daniels supplemented his original report on December 14, 2009, after reviewing Plaintiff's deposition, additional photographs, the Philadelphia Department of Licenses and Inspection's file ("the L&I file"), and Plaintiff's expert report. See Docs. 12 Exh. K; 33 Exh. B. Mr. Daniels concluded that the evidence he reviewed was consistent with his original opinion that the collapse was caused by hydrostatic pressure. Id.

On March 7, 2008, John Hare, P.E., an engineer retained by Plaintiff, authored a report in which he opined that the collapse was caused by the weight of pooled water on the roof. See Doc. 12 Exh. J. Plaintiff brought suit in the Philadelphia Court of Common Pleas on April 13, 2009, alleging breach of contract and bad faith. See Doc. 1 Exh. A. Defendant removed the case to the federal court on May 22, 2009, on the basis of diversity jurisdiction. See Doc. 1. On December 16, 2009, Defendant sought partial summary judgment on the bad faith claim, see Doc. 12, which was granted by the Honorable Mary McLaughlin on February 9, 2010. See Doc. 19. Judge McLaughlin

referred the case to the undersigned with the consent of the parties on February 18, 2011. See Doc. 28.

On April 18, 2011, Plaintiff filed this motion, seeking to preclude the report and testimony of Mr. Daniels and evidence that Plaintiff's property was damaged as a result of hydrostatic pressure. See Doc 32. Defendant has filed a response. See Doc. 33. Considering these filings, I do not find it necessary to hold a hearing in order to make a determination. See Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137, 152 (1999) ("The trial court must have . . . latitude in deciding how to test an expert's reliability, and to decide whether special briefing or other proceedings are necessary . . ."); Meeks v. APV Ltd., No. 00-4191, 2002 WL 32348524, at *2 (E.D. Pa. Feb. 5, 2002) (Hart, M.J.) (denying Daubert motion without a hearing). Thus, the issue is now ripe for disposition.

## II. LEGAL STANDARD

The admissibility of expert testimony is primarily governed by Federal Rule of Evidence 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in a form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Thus, Rule 702 sets forth three principle requirements – "(1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify

about matters requiring scientific, technical or other specialized knowledge; and (3) the expert testimony must assist the trier of fact." Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008) (citing In Re: Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-42 (3d Cir. 1994)). Rule 702 has "a liberal policy of admissibility." Pineda, 520 F.3d at 243 (quoting Kannankeril v. Terminix Inter., Inc., 128 F.3d 802, 806 (3d Cir. 1997)).

In Daubert v. Merrell Dow Pharm., 509 U.S. 579 (1993), the Supreme Court explained that, under the Federal Rules of Evidence, the trial judge acts as a "gatekeeper" to ensure that "any and all expert testimony or evidence is not only relevant, but also reliable." 509 U.S. at 589; Pineda, 520 F.3d at 244. "[An] expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." Pineda, 520 F.3d at 244 (quoting Paoli, 35 F.3d at 742). Thus, the focus of the inquiry is on the methodology used by the expert, rather than the conclusions reached. See id.

There is no definitive checklist used in evaluating expert testimony, and the court's inquiry must be tied to the specific facts of a particular case. Kumho Tire, 526 U.S. at 150. The Third Circuit has suggested the following list of factors that the trial judge may consider in determining reliability:

(1) Whether a method consists of a testable hypothesis;
(2) Whether a method has been the subject of peer review;
(3) The known or potential rate of error;
(4) The existence and maintenance of standards controlling the techniques and operations;
(5) Whether the method is generally accepted;

4

(6) The relationship of the technique to methods which have been established as reliable;
(7) The qualifications of the expert testifying based on the methodology; and
(8) The non-traditional uses to which the method has been put.

Pineda, 520 F.3d at 248 (citing Paoli, 35 F.3d at 742 n.8). In determining the admissibility of Mr. Daniels' opinion, I will be guided by the Kumho criteria.

### III. DISCUSSION

The first requirement of Rule 702 is that the proposed expert witness be qualified to render expert opinions. See Pineda, 520 F.3d at 244; see also Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (qualification requires "that the witness possess specialized expertise"). Plaintiff does not challenge Mr. Daniels' expertise, and I agree that he is qualified. Mr. Daniels' curriculum vitae establishes that he has worked as a consulting civil and structural engineer since 1987, including investigations of the damage to residential, industrial, and commercial buildings. See Doc. 33 Exh. C.

The second principle set forth in Rule 702 is that the proposed expert must testify about matters requiring scientific, technical or other specialized knowledge, meaning that the process or technique used in formulating the expert opinion must be reliable. See Pineda, 520 F.3d at 244. Plaintiff contends that Mr. Daniels' report is "devoid of any testing, scientific information, or even any mathematical equations," does not discuss soil type or water tables, and suggests that Mr. Daniels' opinion "amounts to nothing more

than a 'net opinion' which has no factual support and no indicia of reliability." Doc. 32 Memo. at 1, 2.

In preparing his original report, Mr. Daniels relied on his own inspection of the property approximately one month after the collapse. See Doc. 33 Exh. A at 2. He explained that the rear foundation wall of the garage was attached to an adjacent property's retaining wall, and that both walls collapsed. Mr. Daniels observed that the garage rear foundation wall showed evidence of "severe movement/bulging prior to the collapse," including "large cracks filled with spray foam." Id. In addition, Mr. Daniels explained that the damage was not caused by the weight of ponded water on the roof. "The rear wall that collapsed was parallel to the roof framing, thus it wasn't a bearing wall for the roof." Id. Moreover, Mr. Daniels explained in his supplemental report that the photographs in the L&I file show that it was the bottom of the wall that collapsed, not the upper portion, consistent with hydrostatic pressure rather than a collapse caused by weight on the roof. See Doc. 33 Exh. B at 1-2.

In addressing Plaintiff's challenge, I note that Mr. Daniels' report offers an experienced-based opinion. The fact that Mr. Daniels is qualified to render such an opinion argues in favor or its reliability. See Boring v. Cabela's Inc., No. 08-1574, 2011 WL 43018, at *3 (W.D. Pa. Jan. 6, 2011) (engineer's technical testimony and his qualifications argue in favor of finding opinions to be sufficiently reliable) (citing In re TMI Litigation, 193 F.3d 613, 664-65 (3d Cir. 1999)). Moreover, although Mr. Daniels'

report lacks engineering jargon, there is nothing in Mr. Daniels' report to suggest that he was not guided by accepted principles of engineering in reaching his opinions. Therefore, his methodology appears sufficiently reliable to allow the jury to consider his opinions. There is nothing to suggest anything improper, inappropriate or contrary to standard investigative and engineering procedures. Mr. Daniels made first-hand observations of the collapse and applied his knowledge and experience of structural design and engineering to reach conclusions regarding the cause of the collapse. The mere fact that his conclusions do not match Plaintiff's expert is not a basis for preclusion.

The shortcomings in Mr. Daniels' report identified by Plaintiff (lack of testing, scientific information or mathematical equations) are certainly areas for cross-examination, as are Mr. Daniels' bases for his conclusions. However, under the circumstances, these go to the credibility, not the admissibility of his opinion.

I find Mr. Daniels' methodology based on his experience to be sufficiently reliable. See, e.g., Boring, 2011 WL 43018, at *3 (finding engineer reliable based on general technical knowledge and experience); Meeks, 2002 WL 32348524, at *2 (finding expert reliable based on general nature of expert's theories, extensive experience in expert's CV, and general acceptance of engineering principles); see also Kumho Tire, 526 U.S. at 150 (stating cases exist in which "the relevant reliability concerns may focus upon [an expert's] personal knowledge or experience").

The third principle set forth in Rule 702 is that the expert testimony must assist the trier of fact. See Pineda, 520 F.3d at 244. Although Plaintiff does not specifically argue this point, in arguing that Mr. Daniels' opinion is unreliable, Plaintiff suggests that Mr. Daniels' proposed testimony would not assist the jury. For the reasons I articulated in finding Mr. Daniels' methodology reliable, I disagree. Plaintiff may attempt to discredit Mr. Daniels' ultimate opinion through cross-examination, but has failed to establish that his testimony would not aid the jury.

For the aforementioned reasons, I conclude that Defendant's expert should be permitted to testify and to have his suppositions tested by cross-examination, rather than to have such testimony barred completely. See Daubert, 509 U.S. at 596 ("Vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence"). Such a conclusion is consistent with "the liberal policy of admissibility" embodied by Rule 702. See Pineda, 520 F.3d at 244. Therefore, I will deny Plaintiff's motion to preclude Mr. Daniels' testimony and introduction of his report.

An appropriate Order follows.